**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Kris J. Kinsey, | ) | **CASE NO. 1:17 CV 2412** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| County of Lorain, et al., | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendants. | ) | |

### <u>Introduction</u>

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 38). This is a § 1983 case arising out of the arrest and detainment of plaintiff. For the following reasons, the motion is GRANTED.

### <u>Facts</u>

Plaintiff Kris Kinsey originally filed this Complaint in a *pro se* capacity in the Lorain County Court of Common Pleas. A First Amended Complaint was then filed by retained counsel. The matter was thereafter removed on the basis of federal question jurisdiction to this Court. The First Amended Complaint named as defendants County of Lorain, Sheriff Phil R. Stammitti,

and Jail Administrator Andy Laubenthal.[1]  After being granted leave, plaintiff filed a Second Amended Complaint which added as defendants Mark Stavesky, Samuel Holbrook, Jason Brunner, Jennifer Bowen, and Heather Ables.  Defendants Brunner, Bowen, and Ables were then dismissed upon motion.  Accordingly, the following are currently named as defendants: Lorain County, Stavesky, Holbrook, Stammitti, and Laubenthal.

The Second Amended Complaint asserts the following claims: false arrest (Count One), false imprisonment (Count Two), negligent failure to provide medical care (Count Three), assault and battery (Count Four), intentional infliction of emotional distress (Count Five), negligent infliction of emotional distress (Count Six), violation of civil rights under § 1983 (Count Seven), violation of Americans with Disabilities Act and Rehabilitation Act (Count Eight), abuse of process (Count Nine), and malicious prosecution (Count Ten).

Written documentary evidence submitted to the Court establishes the following facts.[2]

---

[1]   The State of Ohio and City of Elyria were also named as defendants but were dismissed prior to the removal of this action.

[2]

Defendants have also submitted a video recording authenticated by Captain Jack Hammond.  (Doc. 45) Plaintiff asserts that the video has been tampered with. However, plaintiff offers no evidence to demonstrate a motivation to alter the video.  Nor is there actual proof of alteration.  Notwithstanding, plaintiff maintains that it is the "video timeline" which is inaccurate and conflicts with plaintiff's version of the events.  Curiously, plaintiff asserts that the video shows that the events took place over a longer period of time than plaintiff's version. This actually is not favorable to plaintiff. (For example, plaintiff states that according to his version of the events, he was in the restraint chair for only a short time before he was forced to urinate.  He was then immediately taken to change clothes, was booked, put into a suicide suit, and led to the Special Needs Unit. But, the video shows that he was in the restraint chair for two hours.) Moreover, plaintiff relies on the video multiple times to support his own arguments.  In any event, the Court has relied on the documentary evidence, as discussed herein, and has taken plaintiff's version of the events from his own affidavit and deposition

According to plaintiff's affidavit, he currently resides in Philadelphia, Pennsylvania. He is a 100% service-connected disabled United States Army veteran,[3] and has suffered for years with PTSD and ADHD. He was arrested on August 19, 2017, on a 2006 Belmont County bench warrant and booked into the Lorain County Jail. As soon as he entered the jail, he notified the staff that he is a disabled veteran and needed medication. He began questioning officers Holbrook and Stavesky regarding his charges and bail. According to the affidavit, plaintiff has no record of hostility or violence toward others, and he was not hostile or violent, nor did he threaten such, while at the jail. Holbrook and Stavesky did not answer his questions adequately and became frustrated with plaintiff. After several minutes, the officers put plaintiff alone in cell #6 which contained no toilet, no chair, and no bed. Shortly thereafter, plaintiff was instructed to get into the restraint chair and his hands, feet, and torso were bound. According to plaintiff, he did not disobey, resist, or struggle. Plaintiff was not checked on at regular intervals while restrained. Plaintiff yelled repeatedly that he needed to use the bathroom but was ignored, so he urinated while in the restraints. While in the jail, plaintiff states that he never suggested that he wanted to harm himself. After being released from the restraint chair, plaintiff was instructed to put on a suicide suit. He was sent to the Special Needs Unit. (pltf. aff.)

The depositions of plaintiff, Lorain County Sheriff's Corrections Officers Holbrook and Stavesky (and exhibits), and jail counselor Jennifer Bowen, as well as exhibits attached to plaintiff's Second Amended Complaint establish the following.

------------------------

testimony.

[3] Plaintiff was in the army in 1976 for one year, and was never deployed. He is unemployed and receives $2987 per month for his Army disability and $839 per month of Social Security disability income. (pltf. depo.)

According to plaintiff's deposition testimony, he was arrested by an Elyria police officer on August 19, 2017, on a bench warrant issued by Belmont County. The police officer informed plaintiff of the warrant which ordered the arrest of plaintiff for "OVI- first offense." Plaintiff was transported by the officer to the Lorain County Jail. During the transport, he was upset and "a little loud." By the time he arrived at the jail, he was "very upset." Once at the jail for booking, plaintiff repeatedly asked about his charges. After about the fourth or fifth time that the officers responded they did not know, plaintiff "started to get loud." As a result, the officers moved him from booking to a holding cell. The cell was identified as #3 and housed the general population of criminal offenders. Plaintiff did not want to be with the general population. In the holding cell, plaintiff continued to yell, "What are my charges?" Plaintiff was "very manic" and was spinning, kicking, and punching, but only hit the wall of the cell once. The officers told him one time to stop, and he did. Plaintiff was in cell #3 for only a few minutes. Plaintiff agreed he was "creating a disturbance," and continued to swing and yell. He "went crazy" and pounded the wall once. The officers then entered the cell and moved plaintiff to an isolation cell, cell #6. Cell #6 had no toilet. Plaintiff acknowledges that he continued to swing around in the cell by himself and was "hitting the air." Plaintiff stated, "I was aggravated. Mentally disabled. I went crazy." Because plaintiff continued to make a disturbance, the officers put him in a restraint chair for ten minutes. Plaintiff had to urinate, so he bounced the chair around to try to free himself. "My thing was to escape from that chair." Two officers entered the cell and shackled the chair to the wall. As the officers were leaving the cell, plaintiff informed them that he had to urinate, but they left the cell. Plaintiff shouted a profanity at the officers. He then got his pants down and urinated on the floor. The officers reentered the cell and instructed plaintiff to put a "turtle suit" on.

4

Plaintiff agrees this was a "restrictive suicide suit" or "suicide smock," and that he put it on himself. Plaintiff was placed in a "special needs unit" or "suicide prevention cell." Plaintiff agrees he was placed there for suicide watch. Plaintiff was kept in isolation until he was released almost three days later. (pltf. depo.)

The deposition testimony of Corrections Officers Holbrook and Stavesky establish the following. They were on duty in the early morning hours when plaintiff was brought in. Stavesky first encountered plaintiff when he was dropped off at the jail. He was placed in booking cell #3 until the process could begin. Holbrook first encountered plaintiff when he started kicking and pounding the cell doors. Holbrook warned plaintiff "to stop kicking and pounding, someone is going to get hurt. You don't want to end up in a restraint chair." Plaintiff remained in cell #3 for only a short period of time before he was moved to cell #6, "a safe cell," where an inmate cannot hurt other inmates or himself. The cell was purposely designed without a toilet or anything else that could cause injury to the inmate. According to Stavesky, plaintiff was placed in cell #6 because he was "acting irate, kicking, punching, so we wanted to move him away from other inmates." Shortly thereafter, plaintiff was put in the restraint chair because "he was doing the same stuff in" cell #6. He was put in the chair to protect himself and the officers. According to Holbrook, plaintiff urinated in the drain prior to being put in the chair. The chair was shackled to the floor and the wall because plaintiff was bouncing around, and he could have tipped the chair and hurt himself. Plaintiff remained in the chair for two hours so that he would calm down. He was then taken to the shower room, changed into a jail uniform, and the booking process completed. Holbrook was aware that at some point plaintiff was put into suicide precautions. (Holbrook depo.; Stavesky depo.)

5

Corrections Officer Stavesky completed an Incident Report which stated that on August 19, 2017, plaintiff was cited for "creating a disturbance" at 2:05 a.m. The report described that when plaintiff was brought into the department he was "very agitated." A few minutes after being placed into booking, plaintiff "started to kick and pound on the walls and door. He was advised numerous times to quit kicking and pounding the walls and door." When he refused to stop, he was escorted to cell # 6. Once he was in that cell, he again started to kick and pound. Plaintiff was then placed in the restraint chair "for officer safety." The report further states that at the violation hearing, plaintiff stated that he only pounded on the door once. (Stavesky depo. Ex. 6)

Jennifer Bowen, the counselor at the jail, testified that she was called to assess plaintiff later in the morning of August 19 because staff had expressed that he had thoughts of self-harm. Bowen evaluated plaintiff and concluded that he be placed into the special needs unit for suicide precaution. At Bowen's request, plaintiff signed an authorization for the jail to obtain medical records from the Department of Veterans Affairs. (Bowen depo.; Ex. 21) Bowen completed a "Mental Health Encounter: Suicide Log" document that day which indicated that plaintiff was "highly agitated and restless. Pacing in his cell in booking. Thought process tangential and disorganized. Resident was unable to answer even the most simple questions in a direct fashion. Speech was pressured and rambling." (Doc. 40 Ex. B) Bowen further stated that plaintiff "voiced thoughts of wanting to harm himself" to her. He "was placed into suicide precautions for further observation and evaluation at this time." (*Id.*) Bowen also wrote Medical Orders for a "finger food diet- no plastic ware." (Bowen depo. Ex. 19)

Plaintiff testified that he was brought food trays several times, but refused to eat. He claims this was a result of dental work that had been performed. He testified that he wanted Ensure, but agreed the jail did not have a prescription for it. (pltf. depo.)

The Lorain County Sheriff's Office records show that plaintiff was visited about seven times between August 19-21 by mental health/medical staff. The staff recorded in the various logs that plaintiff was suicidal and agitated. It was also noted that he was "focused on the injustice" of his detainment and was in a "high risk state." Additionally, plaintiff displayed "odd traits, personal irresponsibility, acute anger/hostility" and he was "non-redirectable." (pltf. depo. Ex. B)

Plaintiff testified that he signed a Waiver in Lieu of Criminal Rule 4(E) Hearing. The waiver, signed on August 21, states that he was waiving his right to consult an attorney. Plaintiff testified that he understood the waiver. (*Id.* Ex. D) Plaintiff left Lorain County Jail for Belmont on August 21.

This matter is before the Court upon defendants' Motion for Summary Judgment.

**<u>Standard of Review</u>**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates the
> absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely

colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(A) Federal Claims**

**(1) Section 1983**

Count Seven alleges a claim under 42 U.S.C. § 1983. This count alleges that "defendants" violated plaintiff's First Amendment rights when they isolated him for "expressing his thoughts, concerns, and position regarding his arrest and detainment"; his Fourth Amendment rights when he was "improperly arrested and jailed" and "forced to wear a suicide suit, and locked ... in a solitary cell"; his Sixth Amendment rights when plaintiff was "held without offering the opportunity to contact an attorney for several days and by not presenting the warrant"; his Eighth Amendment rights against excessive bail and fines and cruel and unusual punishment when there was no formal investigation regarding plaintiff's ability to pay the fines, he was unlawfully arrested, detained, and isolated, and he was subjected to unnecessary force when restrained and deprived of food, basic hygiene, medications and medical treatment; and his Fourteenth Amendment rights to equal protection and due process based on the foregoing.[4]

**(a) Lorain County**

Defendants argue that plaintiff fails to allege a valid § 1983 claim against the County. This Court agrees. It is well-established that

_____

[4]     Plaintiff abandons some of the allegations by not addressing them in his brief. The Court addresses only the claims argued by plaintiff.

> A governmental entity 'cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.' *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, liability attaches where the unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated' by municipal officers, or where the deprivation results from governmental "custom." *Id*. The governmental action must be 'the moving force' behind the constitutional violation. *Id*.

*Hanson v. Madison County Detention Center,* 736 Fed.Appx. 521 (6th Cir. 2018). A § 1983 claim may be based on inadequate police training where "(1) the training program at issue is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the municipality's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Sheffey v. City of Covington*, 2012 WL 28056 (6th Cir. Jan. 5, 2012) (citing *Hill v. McIntyre*, 884 F .2d 271, 275 (6th Cir.1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

As defendants point out, plaintiff has failed to allege a claim under *Monell* regarding any policy, custom, or failure to train. In response, plaintiff argues at length as to the lack of training and supervision. However, plaintiff failed to allege in his Second Amended Complaint the existence of a policy, custom, or lack of training. Even assuming plaintiff had alleged a *Monell* claim, where, as here and discussed below, no constitutional violation occurs, the municipality "likewise cannot be held liable." *Hanson,* 736 Fed. Appx. at 541. Finally, as also noted by *Hanson*, "A *Monell* claim that survives summary judgment is exceedingly rare, and rightly so." *Id.* at 542.

Therefore, any § 1983 claims asserted against Lorain County are dismissed.

**(b) Stammitti and Laubenthal**

Plaintiff has named Lorain County Sheriff Stammitti and Jail Administrator Andy Laubenthal as defendants. Defendants argue that they must be dismissed because they had no contact with plaintiff. This Court agrees. It is well-established that supervisory officials cannot be held liable under § 1983 solely on the basis of *respondeat superior*, or because they failed to remedy a subordinate's unconstitutional conduct or denied an administrative grievance. *See Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999). Rather, to hold a supervisor liable, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984). Plaintiff testified repeatedly that these defendants took no part in his arrest, restraint, isolation, or medical treatment, and had no personal contact or involvement with his incarceration. (pltf. depo. 50-51, 58, 69-71, 77, 89-90). Accordingly, these defendants are dismissed.

### (c) Stavesky and Holbrook

Corrections Officers Stavesky and Holbrook are the sole remaining defendants on the § 1983 claim. To prevail on such a claim, the plaintiff must prove 1) the deprivation of a right secured by the Constitution or laws of the United States which was 2) caused by a person acting under the color of state law. *Winkler v. Madison County*, 893 F.3d 877 (6th Cir. 2018) (citations omitted). Where, as here, the individual defendants assert qualified immunity, the government officials may not be held liable if 1) the officers did not violate any constitutional guarantees or 2) the guarantee, even if violated, was not clearly established at the time of the alleged misconduct. *Arrington-Bey v. City of Bedford Heights,* 858 F.3d 988 (6th Cir. 2017) (citations omitted). Defendants argue that plaintiff cannot establish any of the elements of his constitutional claims. For the following reasons, this Court agrees. Because he cannot establish

11

the constitutional claims, the § 1983 claims fail and defendants are entitled to qualified immunity.[5]

### (i) First Amendment

Plaintiff does not discuss law concerning a detainee's First Amendment claim, but it is clear from his argument that he is asserting retaliation. "Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution." *Berkshire v. Hazel*, 2018 WL 4999950 (W.D.Mich. Oct. 16, 2018) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct." *Id.* (citing *Thaddeus-X*). "Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Id.* (citing *Smith v. Campbell*, 250 F.3d 1032 (6th Cir. 2001)).

Plaintiff argues that defendants isolated him in cell #6 and put him in the restraint chair in retaliation for his repeated questioning regarding his charges which aggravated the officers. Plaintiff asserts that while the video shows he was anxious, pacing in circles, and gesticulating prior to being moved to cell # 6, he was not threatening. Once in the cell, he was pacing and

---

[5]       In addition to failing to show the violation of a constitutional guarantee, plaintiff wholly fails to even address whether the guarantee violated was "clearly established" at the time of the alleged misconduct. The law is clear that "a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires. *Arrington-Bey, supra* (citing *White v. Pauley*, 137 S.Ct. 548 (2017)). Plaintiff has not done so.

"pushing off the walls open-handed." (Doc. 47 at 13) But, he was not a threat to his own or the officers' safety. Rather, plaintiff maintains, he was isolated and restrained because the officers were frustrated and tired of listening to his questions. Plaintiff asserts that his questions regarding his charges qualify as protected speech for which the officers retaliated by isolating and restraining him. Additionally, plaintiff points to the deposition testimony of his expert R. Paul McCauley, PhD who testified that "when they put him in the chair, I don't think that ... a corrections officer could have a reasonable perception that he was a violent actor."

Accepting plaintiff's own deposition testimony, plaintiff cannot establish any of the elements of a First Amendment claim. Plaintiff testified that by the time he arrived at the jail, he was very upset and started to get loud after the officers did not answer his questions regarding his charges. Once put in the booking cell, plaintiff was "very manic" and was spinning, kicking, and punching. He hit the wall of the cell once. He agreed he was creating a disturbance. Once put in cell #6, he continued to swing around and make a disturbance. He was "hitting the air," "was aggravated," and "went crazy." He was then placed in the restraint chair. Once in the chair, he tried to escape from it. Plaintiff's testimony does not contradict the Incident Report, set forth above, with the exception that he pounded on the walls more than once.

Based on plaintiff's own testimony, even assuming his questions regarding his charges were protected conduct, his admitted erratic behavior provided justification for the defendants' actions. Corrections officers are authorized to "control or subdue inmates who refuse to obey the institution rules and regulations, including a direct order from a CO." *Scandrick v. Ohio Dept. of Rehabilitation and Correction,* 2004 WL 258237 (Ohio Court of Claims 2004). There is no evidence plaintiff was put in cell # 6 or the restraint chair for his questions. Plaintiff asserts he

13

was not hostile or threatening toward anyone.  But, his own testimony shows he was acting out physically, was exhibiting strange behavior, and was very agitated.   Clearly, the officers would reasonably respond to such unpredictable behavior to maintain security in the jail. There is no evidence that the placement into cell # 6 and the restraint chair was as a result of anything other than plaintiff's own odd behavior.

The First Amendment claim is dismissed.

**(ii) Fourth, Eighth, and Fourteenth Amendments**

The Sixth Circuit has explained:

> The Fourth Amendment's prohibition against unreasonable seizures bars excessive force against free citizens, *see Graham v. Connor*, 490 U.S. 386, 388 (1989), while the Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons. *See Whitley v. Albers*, 475 U.S. 312, 318–22 (1986). When a citizen does not fall clearly within either category—e.g., pretrial detainees—the Fourteenth Amendment's more generally applicable Due Process Clause governs to bar a governmental official's excessive use of force. *See Lanman v. Hinson*, 529 F.3d 673, 680–81 (6th Cir. 2008); *Phelps v. Coy*, 286 F.3d 286 F.3d 295, 300 (6th Cir. 2002).

*Burgess v. Fischer,* 735 F.3d 462 (6th Cir. 2013).  To succeed on the Fourteenth Amendment claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson,* 135 S.Ct. 2466 (2015) "Moreover, we must account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security."  *Ayala-Rosales v. Teal,* 659 Fed. Appx. 316 (6th Cir. 2016) (citing *Kingsley*) (internal quotations omitted).

14

Plaintiff asserts that the use of the restraint chair was objectively unreasonable because, according to his expert, although he was kicking and punching, he was alone in the cell and was not banging his head. Thus, he was not a threat to himself or others. Plaintiff also maintains that being forced into suicide precautions was objectively unreasonable because the initial questionnaire completed by Stavesky shows that he had never attempted suicide and was not contemplating suicide at that time. (Doc. 47 Ex. 3) Plaintiff also submits his own affidavit which avers, "I have never contemplated suicide" and never stated or suggested in any way that he wished to harm himself. (pltf. aff.) Finally, plaintiff asserts that being in cell #6 violated the Constitution.

As to the restraint chair, defendants point out that "[a] restraint chair may be properly used to restore control over an individual who is in custody or to prevent such an individual from harming himself." *Lister v. Pickaway County Sheriff's Office,* 2015 WL 671997 (S.D. Ohio 2015 (citing *Fletcher v. Vandyne*, 2009 WL 1687956 (S.D.Ohio June 11, 2009); *Grace v. Efaw,* 2012 WL 3962799 (S.D.Ohio Sept.10, 2012) (finding that the use of a restraint chair was not excessive where plaintiff was only in the restraint chair long enough for officers to ensure that he posed no threat of harm).

Clearly, plaintiff's own version of the events shows that he was acting erratically, physically and verbally. It was objectively reasonable to use the chair to restore control. Plaintiff may be of the opinion that his wild behavior posed no threat of harm to the officers, but any objective observation of the situation would show that a detainee swinging and kicking the air may have resulted in contact with an officer. It was objectively reasonable that the defendants, in an attempt to manage the facility and restore order, restrained plaintiff in the chair.

Plaintiff also argues that "being forced into suicide precautions was objectively unreasonable." (Doc. 47 at 16). However, plaintiff does not dispute that Jennifer Bowen made the decision to put plaintiff into suicide precautions. (Doc. 47 at 8) Thus, Stavesky and Holbrook were not responsible for that decision. Nonetheless, plaintiff disputes the decision. He argues that defendants knew he was not suicidal because his intake questionnaire indicated that he had never attempted suicide and was not contemplating suicide at that time. (Doc. 47 Ex. 3) Plaintiff also submits his affidavit wherein he avers that he has never contemplated suicide. However, even if the initial questionnaire showed that plaintiff was not suicidal, the evidence shows that plaintiff indicated to jail personnel an intention to kill himself. Bowen's notes state that she initially met with plaintiff in booking after Corrections Officer Brunner reported that plaintiff told the booking staff that he was going to kill himself. (Doc. 40 Ex. B) Plaintiff asserts that Brunner testified at deposition that he did not recall plaintiff making statements of self-harm. However, it does not appear that plaintiff has submitted Brunner's deposition transcript to the Court. Regardless, Bowen further states in her notes that plaintiff told her that he wanted to kill himself: "Resident continued to voice thoughts of wanting to harm himself while talking with this writer. 'Screw it. I want to end it all.' " (*Id.*) As a result, Bowen states, "Resident was placed into suicide precautions for further observation and evaluation at this time." (*Id.*) The mental health encounter logs repeatedly indicate that plaintiff expressed thoughts of suicide. (Doc. 40 Ex. B) For instance, Heather Ables, RN recorded, "Resident would not answer questions for the medical screening but would only say that, I was talking to a 'dead man' because he would be taking his life." (*Id.*) Thus, even accepting plaintiff's averment that he has never contemplated suicide and considering the original intake questionnaire that indicated

plaintiff was not suicidal, it was certainly not objectively unreasonable to err on the side of caution and place plaintiff in the special needs unit for suicide watch.

Finally, plaintiff argues that being placed in cell #6, which had no sink, toilet, bed, or chair even though pertinent prison regulations require that cells have a working toilet and drinking water, was unreasonable. Again, plaintiff admits to his erratic conduct which precipitated the decision to place him in an isolated "safe cell." The brief amount of time plaintiff was isolated in this cell, which caused no discernible injury, does not "cross the *constitutional* line." *Hanson v. Madison County Detention Center,* 736 Fed.Appx. 521 (6th Cir. 2018) (The court noted that "the Constitution is not concerned" with a *de minimus* level of force. And, inmates who complain "of a push or shove that causes no discernible injury almost certainly fail to state a valid excessive force claim." Nor does "every malevolent touch by a prison guard" give rise to a federal cause of action.)

For these reasons, plaintiff's Fourth, Eighth, and Fourteenth Amendment claims fail.

**(iii) Sixth Amendment**

Plaintiff contends that he requested a phone to call counsel. He testified that "they wouldn't even let me make a phone call." (pltf. depo. 64) However, plaintiff does not dispute that he signed the Waiver in Lieu of Criminal Rule 4(E) Hearing and he testified that he understood the waiver.

For the foregoing reasons, summary judgment is granted as to plaintiff's § 1983 claim

**(2) Americans with Disabilities Act and Rehabilitation Act**

17

Although defendants moved for summary judgment on both the Americans with Disabilities Act and Rehabilitation Act, plaintiff only responded that he can meet his burden of proof regarding his ADA claim. Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of his disability." *Hardy v. Ingham County Jail,* 2018 WL 4346842 (W.D.Mich. Sept. 12, 2018) (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) ).

Plaintiff merely asserts, without pointing to evidence, that he was treated differently from other Lorain County Jail residents when he was isolated and restrained. Because there is no evidence that plaintiff was discriminated against because of his disability, summary judgment is granted on Count Eight.

**(B) State Law Claims[6]**

**(1) Lorain County**

Defendants assert that Lorain County is not *sui juris.* Plaintiff presents no valid basis to the contrary. The Court agrees with defendants. As for state law claims, "Counties, as political

---

[6] Although the federal claims have been dismissed, this Court exercises its discretion to consider the state law claims.

entities, are not *sui juris*; they are held accountable through their elected representatives, to wit, their commissioners." *Lassen v. Lorain County, Ohio,* 2014 WL 3511010 (N.D.Ohio July 14, 2014). Thus, the state law claims asserted against Lorain County are dismissed. [7]

### (2) Stammitti and Laubenthal

As with the § 1983 claims, there is no allegation that these defendants personally participated in, directed, or acquiesced in the matters at issue in this case. Therefore, they cannot be held liable on the state law torts merely by virtue of their office. *Jennings v. Grayczyk*, 1987 WL 5483 (Ohio App. 6th Dist. Jan. 16, 1987) (internal quotations and citations omitted)("[A] public official will not be held liable for the acts or defaults, negligence, or omissions of subordinate officials in the public service, whether appointed by him or not, unless he directs the act complained of to be done or personally co-operates in the negligence from which the injury results.")

### (3) Stavesky and Holbrook

For the following reasons, the Court agrees with defendants that the state law claims fail. [8]

---

[7] Additionally, Lorain County (which is also the entity being sued in any official capacity claims against the other defendants) is entitled to immunity as to all state law claims under Ohio Revised Code § 2744 for all the reasons stated by defendants in their motion. (Doc. 38 at 21-23)

[8] Additionally, defendants assert immunity as to the state law claims alleged against them in their individual capacities. This Court agrees with defendants for the reasons stated in the motion. (Doc. 38 at 23-26)

Count One asserts false arrest based on the allegedly invalid bench warrant upon which plaintiff was arrested. Clearly, Corrections Officers Stavesky and Holbrook had nothing to do with the warrant or arrest.

Count Two alleges false imprisonment based on plaintiff's detention at the jail, segregation and isolation in cell #6, restraint in the chair, and placement in the suicide cell. Plaintiff must demonstrate (1) an intentional detention and (2) the unlawfulness of the detention. *Henderson v. Euclid,* 2015 WL 114601 (Ohio 8th App. Dist. Jan. 8, 2015 ) (citing *Hodges v. Meijer, Inc.*, 129 Ohio App.3d 318 (12th Dist.1998). An arrest based on probable cause is a lawful detention and defeats a false imprisonment claim.  *Id.*  Not only has plaintiff not demonstrated that his arrest was not lawful, but (for the reasons discussed above) he has not shown that defendants' actions in isolating and restraining him, as well as placing him in the suicide cell, were unlawful or done for any purpose other than to protect him and those around him.

Count Three alleges failure to provide medical care. Plaintiff asserts in his brief that medical staff negligently failed to assess him and failed to get his medications.  Stavesky and Holbrook are not part of the medical staff.

Count Four alleges assault and battery which requires that plaintiff show a willful threat or attempt to harm or touch another offensively which places the other in fear or such contact, or an intentional harmful or offensive contact with another. *Stokes v. Meimaris,* 111 Ohio App.3d 176 (1996); *Stafford v. Columbus Bonding Center,* 177 Ohio App. 3d 799 (2008). Plaintiff only argues that there is ample evidence that defendants touched and threatened to touch him

offensively which placed him in fear as a result.  However, the claim fails for the same reasons stated above with regard to the § 1983 claims.  Moreover, plaintiff ignores the law cited by defendants which holds that corrections officers have a privilege to use force upon inmates under certain conditions so long as the force is used in the performance of their official duties and does not exceed that which is necessary under the circumstances.  *Scandrick v. Department of Rehabilitation and Correction,* 2004 WL 258237 (Ohio Court of Claims 2004).  Plaintiff has presented no evidence that Stavesky and Holbrook used more force than necessary.

Counts Five and Six allege negligent and intentional infliction of emotional distress.  In his brief, plaintiff fails to oppose defendants' motion regarding the intentional infliction of emotional distress claim and bases his negligent infliction of emotional distress claim on the same arguments stated above regarding the negligent failure to provide medical care.  The Court agrees that the intentional claim is subject to dismissal for the same reasons stated in defendants' motion. (Doc. 38 at 19-20) Additionally, the negligent claim fails for the same reasons stated above regarding the denial of medical care.

Count Nine alleges abuse of process but is again based on the Belmont County bench warrant over which defendants had no control.

Count Ten alleges malicious prosecution which requires that plaintiff establish: (1) malice in instituting or continuing a prosecution; (2) lack of probable cause; and (3) termination of the prosecution in his favor. *Ash v. Ash*, 72 Ohio St.3d 520 (1995).  As defendants point out, there is no evidence that they instituted a prosecution against plaintiff or that such prosecution terminated in his favor.

The state law claims are dismissed.

**<u>Conclusion</u>**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted.


 IT IS SO ORDERED.



                                        /s/ Patricia A. Gaughan_____
                                        PATRICIA A. GAUGHAN
                                        United States District Court
                                        Chief Judge

Dated: 1/23/19